## WALLACE *v.* CENTRAL VT. R. CO.

(*Supreme Court, General Term, Third Department.*   March 15, 1892.)

**1. INJURIES TO BRAKEMAN—OVERHEAD BRIDGE—CONTRIBUTORY NEGLIGENCE.**
Plaintiff, a brakeman on a moving freight train, was struck by an overhead bridge, and injured, in the day-time, while he was standing with his back to the bridge watching the passage of the cars over a reverse curve, as was his duty, to see and report if any of them should break loose.   There was a "tickler" or "telltale" (suspended wires) a short distance from the bridge under which plaintiff passed, but it was out of order, and did not warn him of the close proximity of the bridge.   He had passed under the bridge many times, was familiar with its locality, and knew of the insufficiency of the "tickler" to afford warning.   *Held*, that he was guilty of contributory negligence, and could not recover.

**2. SAME—EVIDENCE.**
The fact that plaintiff had forgotten the bridge and its danger did not relieve him from the consequences of his negligence, in the absence of any circumstances producing hurry, excitement, or confusion.

Appeal from circuit court, St. Lawrence county.

Action by George S. Wallace against the Central Vermont Railroad Company.   From a judgment for defendant, plaintiff appeals.   Reversed.

Argued before PUTNAM and HERRICK, JJ.

*Swift & Sanford*, (*Theodore Swift*, of counsel,) for appellant.   *Louis Hasbrouck*, for respondent.

HERRICK, J.   This is an appeal from a judgment of nonsuit entered upon an order made at the close of the appellant's evidence upon the trial.   The action is to recover damages for injuries sustained by the appellant by reason of the alleged negligence of the respondent.   The appellant was in the employ of the respondent as a freight brakeman, and received the injuries com-

plained of between 10 and 11 o'clock in the forenoon on the 12th day of June, 1889, about one mile westerly from the village of Chateaugay, in Clinton county. At the point where the accident occurred the road of defendant is crossed by a bridge which is about 16 feet above the rails of defendant's road. Before reaching the bridge there is a reverse course, upon a down grade, where trains were liable to break apart. Between 50 and 60 feet from the bridge is what is called a "tell-tale" or "tickler," to warn brakemen of the proximity of the bridge. It is constructed of an upright upon each side of the road, a pole running across the road upon the uprights, and from such pole a number of strands of wire are suspended. At the time of the accident there is evidence showing that some of these wires had become twisted and displaced, and it is contended, on the part of the appellant, that thereby the distance between such hanging wires had become so great that it was possible for a person, standing upon the top of the cars, to pass between such wires without being touched; and he says that prior to the accident he had not noticed the tickler or been warned by it. The appellant knew of the bridge, and had passed under it upwards of 30 trips. At the time of the accident the train consisted of 54 cars and one engine, and there was one brakeman besides the appellant. It was the duty of the appellant, when the train was in motion, to be on the top of the cars to respond to any call to put on the brakes, and to keep watch of the train, and see that it did not part and run together, and to be in such a position that, if such an accident occurred, he could signal the engineer of the train. As the train approached the bridge on the down grade, over the reverse curve, going at the rate of from 12 to 15 miles an hour, the appellant was on the tenth car from the engine, looking towards the rear end of the train, and with his back to the bridge, leaning forward a little with his hands on his knees. The car upon which he stood was about 12 feet in height, and the respondent himself is 5 feet 10 inches in height. While in the position described, watching the rear of the train, to see that it did not break apart, the appellant reached the bridge, was struck by it, and rendered insensible, his skull fractured, and his shoulder dislocated. The appellant on the trial testified that he was not looking out for the bridge on the occasion when he was hurt; that he was attending to other matters; that he had forgotten about it.

For the purpose of this appeal, it would be profitless to discuss the question as to whether there was negligence on the part of the respondent. If the appellant was not free from contributory negligence, the fact that respondent was negligent will not avail him. The appellant was in the ordinary discharge of his duty. He had come to a part of the road where, from its perilous condition, added watchfulness was needed on his part. At the same time, that fact was also a warning to him that he was approaching a point of danger, and notice to him to prepare for it. He knew of the existence of the bridge, where it was located, and knew that it was a low bridge. He had passed under it many times before on the tops of cars, yet he approached it standing up, and with his back towards it. It could not be that he did this relying upon being warned by the ticklers or tell-tales, because he says that, prior to that time, he had never noticed them, and had never been struck by them at the bridge before. It was therefore as to him as if no ticklers or tell-tales were in fact there, and "it was his duty to use due care and caution in approaching the bridge to avoid injury from it." *Fitzgerald* v. *Railroad Co.*, (Sup.) 12 N. Y. Supp. 932. The fact that he had forgotten about the bridge does not relieve him from the charge of contributory negligence, any more than the forgetfulness of a railway officer to perform his duty would relieve a railroad from responsibility for resulting injuries. I do not mean to say that forgetfulness may not occur under such circumstances as to relieve the person forgetting from the charge of want of due care on his part, but in this case he was in the ordinary discharge of his duty, the road

was in its usual condition, there was nothing to cause excitement, hurry, or confusion, and he must be held to have assumed the risks incidental to a hazardous employment, and of the danger arising from an "open, visible structure known to him," or of which he must have known had he exercised ordinary care and observation. In *Williams* v. *Railroad Co.*, 116 N. Y. 628, 22 N. E. Rep. 1117, where it is held that a pedestrian crossing a railroad must, in the absence of circumstances excusing it, look in each direction to apprise himself of approaching danger, and cannot omit that precaution in reliance upon the railroad company to perform its duty to give notice of approaching trains. *Rodrian* v. *Railroad Co.*, 125 N. Y. 526, 26 N. E. Rep. 741. It seems to me not too much to say that a railroad employe who takes the ordinary risks of his employment, and who knows of the existence of a structure of the kind in question, and has passed under it many times, should, in approaching it, keep his eyes open, and his senses about him, and should not, in broad daylight, rush upon it, standing up, with his back towards it, and yet be held to have exercised due care and caution. The judgment and order appealed from should be affirmed, with costs and printing disbursements.